IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **BRANDON SIMS,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No. 4:14-CV-1628-RDP |
| } | |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of Social Security,** } | |
| } | |
| } | |
| Defendant, } | |

## MEMORANDUM OF DECISION

Plaintiff Brandon Sims filed this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed his applications for disability, DIB, and SSI on July 10, 2011. (R. 149, 192). In both applications, Plaintiff alleged that his disability began on March 11, 2011. (*Id.*). Plaintiff's applications were initially denied by the Social Security Administration on October 26, 2011. (R. 67-68). Plaintiff then requested and received a hearing before Administrative Law Judge Lisa M. Johnson ("ALJ") on November 19, 2012. (R. 34-62). The ALJ's decision, dated January 25, 2013, found that Plaintiff had not been under a disability within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act. (R. 16). Following the decision of the ALJ,

Plaintiff requested review by the Appeals Council.  (R. 13).  Plaintiff's request for review was denied, thereby making it the final decision of the Commissioner a proper subject of this court's appellate review.  *See* 42 U.S.C. §§ 405(g) and 1383(c).

**II.    Facts**

At the time of the ALJ's decision, Plaintiff was 28 years old with a ninth grade education. (R. 123, 151).  Plaintiff's work history consists of various roles of employment.  (R. 138-39). Plaintiff worked for Keystone Foods LLC, where he operated a packaging machine.  (R. 47-48, 138).  He was also employed as a construction laborer for Alabama Plastering Contractors, where he would mix plastering mud and carry it to other employees.  (R. 47, 57, 139).  Plaintiff also worked in a restaurant, which required him to wash dishes, complete prep work, and occasionally cook.  (R. 46).  William F. Green, an impartial Vocational Expert, appeared at the ALJ hearing and testified that Plaintiff's work operating a packaging machine was considered medium exertion, unskilled labor; his work as a construction laborer as very heavy exertion, unskilled labor; and his work washing dishes and kitchen helper as medium exertion, unskilled labor.

Plaintiff alleges that he has been disabled since March 11, 2011 because he mentally cannot hold down a job.  (R. 40).  Plaintiff specifically cited bipolar disorder and schizophrenia as conditions that limit his ability to work.  (R. 152).  Plaintiff stated during the ALJ hearing that he was financially unable to see a psychiatrist about his bipolar disorder and was not taking any medication for this disorder.  (R. 40).  He did state, however, that he was taking medication (specifically, Klonopin) to treat his alleged schizophrenia.  (*Id.*).

During questioning by the ALJ, Plaintiff testified that he had been diagnosed with schizophrenia by three individuals: Dr. Judy Cook, Ms. Ashley at CED, and Dr. Sarah Rochester

at Crestwood.  (R. 41).  Plaintiff further testified that he had recently received medical treatment from Dr. Hood, but that Dr. Hood was his medical doctor, not a psychiatrist.  (R. 41, 433-38, 451-56).  Plaintiff alleged that Dr. Hood had diagnosed him with an unidentified back issue but was unable to more precisely identify the problem because his lack of insurance.[1]  (R. 42).

On October 3, 2011, Dr. Bentley, a psychologist, conducted a mental examination of Plaintiff.  (R. 411).  Dr. Bentley noted that Plaintiff's history of psychiatric problems began in late childhood and that he was "severely depressed, [] anxious, and had poor self-esteem."  (*Id.*). Dr. Bentley further noted that Plaintiff was initially treated by Dr. Cook, but after Dr. Cook moved from the area, Plaintiff did not receive any further psychiatric treatment until 2008, when he was admitted to Crestwood Hospital.  (R. 41, 351-64, 411).  Dr. Bentley diagnosed Plaintiff with depression, polysubstance abuse, and history of attention deficit hyper-activity disorder ("ADHD").  (R. 413).  Additionally, Dr. Bentley noted that Plaintiff had "[p]robable borderline intellectual functioning" and also suffered from Asthma and Hypertension.  (*Id.*).

Dr. Robert Estock was consulted to provide a psychiatric review and mental residual functional capacity ("RFC") assessment of Plaintiff.  (R. 415-28, 429-32).  Dr. Estock found that Plaintiff suffered from ADHD, major depressive disorder, and drug dependence.  (R. 416, 418, 423).  In Dr. Estock's mental RFC assessment, he determined that Plaintiff had no significant limitations in thirteen categories, while Plaintiff had moderate limitations in seven other categories.  (R. 429-30). Dr. Estock found that Plaintiff suffered only moderate limitations in activities of daily living, maintenance of social functioning, and maintaining concentration, persistence, or pace.  (R. 425).  Dr. Estock further noted that Plaintiff's mental status was not suggestive of a psychotic disorder.  (R. 427).

---

[1] Plaintiff's back injury allegedly arose out of an incident that occurred while he was working for a tree service; however, employment with the tree service is not mentioned in his job history. (R. 42).

During the hearing, the Vocational Expert was questioned by the ALJ and asked if an individual of Plaintiff's age, education, and work history, doing work at all exertional levels, performing simple, routine, repetitive tasks, maintaining attention and concentration for two hour periods at a time, would not require interacting with the general public but may have occasional interaction with coworkers and supervisors, capable of adapting to routine and infrequent workplace changes, and making simple work-related decisions, be capable of performing Plaintiff's past work.  The Vocational Expert responded that the person could do the machine packaging job and other jobs in the national economy that are at the medium and unskilled level, such as hand packager, cleaning jobs, industrial cleaning jobs, vehicle cleaners (not cars), and landscape labor jobs that are at the heavy and unskilled level.  (R. 58).  When asked to assume that the individual could have no interaction with coworkers (but still with occasional interaction with supervisors), and need two reminders per workday to stay on task, the Vocational Expert replied that the individual would be unable to perform Plaintiff's past work, nor any other jobs available.  (R. 59).  When questioned by Plaintiff's attorney as to what level of absenteeism is generally tolerated, the Vocational Expert responded "one absence per month."  (*Id*.).  When asked if the hypothetical person had to lie down in excess of two hours per day, the Vocational Expert responded that the same jobs would not be available.  (R. 61).

**III.    ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than 12 months. In order to be disabled under the Act, a claimant must meet the requirements of each step.

First, the ALJ must determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant is not disabled, and therefore cannot claim disability. 20 C.F.R. 404.1520(b).

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. 404.1520(a)(4)(ii). The key issue at this step is whether the impairment or combination of impairments is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If no such impairment exists, then the claimant may not claim disability. *Id.*

In the third step, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the claimant meets these criteria, then the claimant is to be declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Should the claimant not fulfill the requirements necessary to be declared disabled under the third step, then the ALJ may find disability under the next two steps of the analysis. The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this step of the process, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity and had a combination of severe impairments. (R. 21). Specifically, the ALJ found that Plaintiff suffers from major depressive disorder with anxiety, ADHD, and borderline intellectual functioning. (R. 21). However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (R. 22). Furthermore, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.05. (R. 23). The ALJ found that Plaintiff has a detailed history of caring for himself successfully, he does not have a valid verbal performance or full scale IQ of 59 or less, and he does not have a valid verbal performance or

6

full scale IQ of 60 through 70 and physical or other mental impairment imposing an additional and significant work-related limitation of function.  Most importantly, the ALJ found the evidence of record does not support a finding that Plaintiff has deficits in adaptive functioning initially manifested during the development period, and that Plaintiff's mental impairments do not cause "at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation."  (*Id.*).

The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, with some limitations which are non-exertional in nature.  (R. 23).  In reaching this finding, the ALJ relied upon the reports of Dr. Bentley and Dr. Estock.  (R. 25).  Dr. Estock's report was particularly relevant to the findings of the ALJ because his report determined that Plaintiff's mental impairments caused, at worst, moderate limitations in seven areas and found no significant limitations in thirteen areas.  (R. 25, 429-30).

### IV.     Plaintiff's Argument for Reversal

Plaintiff argues the ALJ committed eight errors in making her determination.  (Pl's Mem 1).  These purported errors include: (1) the ALJ gave insufficient weight to the opinion of Dr. Hood; (2) the ALJ failed to consider all of Plaintiff's severe impairments; (3) the ALJ failed to consider Plaintiff's combination of impairments; (4) the ALJ failed to state adequate reasons for finding Plaintiff not credible; (5) the ALJ's decision was not based on substantial evidence; (6) the ALJ improperly drew adverse inferences from lack of medical treatment; (7) the ALJ erred in placing improper weight in the testimony of Dr. Jack Bentley; and (8) Plaintiff meets the requirements of Listings 12.03, 12.04, and 12.06.

## V.     Standard of Review

In judicial reviews of disability claims under the Act, the court is limited to determining whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Eleventh Circuit has defined substantial evidence as "less than a preponderance, but rather such evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The Commissioner's factual findings are conclusive when supported by substantial evidence.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529.  Legal standards, however, are reviewed *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## VI.     Discussion

In order to organize this discussion, the court has grouped Plaintiff's arguments into categories based upon the subject matter of each assertion and considered them collectively by category.  Accordingly, the court addresses Plaintiff's arguments as follows:  (1) whether his disorders meet Listings 12.03, 12.04, and 12.06; (2) whether the ALJ gave improper weight to testimony; (3) whether the ALJ properly considered his impairments; (4) whether the ALJ improperly found Plaintiff not credible and improperly drew adverse inferences against him; and (5) whether the ALJ's decision was based upon substantial evidence.

## A.  Whether Plaintiff Qualifies as Disabled under the Act is a Question Reserved for the Commissioner

Plaintiff contends that the record evidence demonstrates that he meets Listings 12.03, 12.04, and 12.06. (Pl.'s Mem. 22-36). While the court may review legal standards *de novo*, the same is not true of fact findings made by the ALJ. The question of whether Plaintiff's impairments meet the listings is one reserved to the Commissioner. As the Eleventh Circuit has noted, this court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Indeed, this court's review is limited to whether the ALJ applied the correct legal standards and whether the ALJ's decision was supported by substantial evidence. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The court finds that the ALJ applied the proper legal standards and that the ALJ's decisions are supported by substantial evidence, for the reasons set forth below.

### 1.  The ALJ Gave the Proper Amount of Weight to the Testimony of Drs. Hood and Bentley

After careful review, and for the reasons discussed below, the court concludes that the ALJ gave proper weight to the testimony of Dr. Hood and Dr. Bentley.

#### a.  The ALJ Did Not Commit Error By Giving Less Weight to the Opinion of Dr. Hood

Plaintiff argues that the ALJ gave less weight to the opinion of Dr. Hood. (Pl.'s Mem. 8-10). The process of how the Commissioner weighs medical opinions involves numerous factors, such as the examining and treatment relationship, supportability, and consistency. *See* 20 C.F.R. § 404.1527(c). Dr. Hood's opinion, as Plaintiff's treating physician, is generally to be given more weight. *See* 20 C.F.R. § 404.1527(c)(2). However, in order to be granted controlling weight, the treating physician's opinion must be "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and . . . []consistent with the other substantial evidence in [the] case record . . ." *Id.*

Plaintiff alleges that "Dr. [] Hood confirmed disability on January 27, 2012 due to low back pain and depression." (Pl.'s Mem. 8). However, there are certain issues which "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . ." *See* 20 C.F.R. § 404.1527(d). As noted, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work'" does not necessarily mean that the Commissioner will find the claimant disabled. *See* 20 C.F.R. § 404.1527(d)(1).

The ALJ identified several reasons for giving the opinion of Dr. Hood less weight. First, Dr. Hood is not a mental health professional. (R. 26). Additionally, while Dr. Hood had identified depression as an impairment which would lead to disability, he did not refer Plaintiff to a mental health professional. (R. 26, 437). The ALJ also noted that Dr. Hood's opinions were inconsistent with the great weight of the medical evidence and his opinion regarding Plaintiff's chronic lower back pain is unsupported by the record. (R. 26).

The Eleventh Circuit has identified situations where an ALJ has "good cause" to give less weight to the opinion of a treating physician in *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2003). These situations include the following: (1) the opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctors own medical records. *Id.* at 1240. While the treating physician's opinion is generally due to be given great weight, such an opinion is not unassailable.

In this case, the court finds that the ALJ had good cause to grant less weight to Dr. Hood's opinion. First, the opinion is not bolstered by the evidence. *See Phillips*, 357 F.3d at

1240. In the Mental Health Source Statement provided by Dr. Hood, dated January 12, 2012, he identified twelve areas in which Plaintiff had "marked limitations." (R. 433-34). However, he provided no evidence to support this diagnosis. A referral to a mental health specialist could have bolstered this diagnosis. Without further supporting evidence, this diagnosis falls into another category of causes to grant a treating physician's opinions less weight. *Phillips*, 357 F.3d at 1240. A diagnosis which provides no supporting evidence is merely a conclusory opinion.

Second, a mental health examination conducted by Dr. Estock contradicts Dr. Hood's findings. (R. 429-30). Dr. Estock's assessment found no marked limitations as to Plaintiff's RFC. (*Id.*). Dr. Estock noted that Plaintiff had seven moderate limitations, and believed that Plaintiff would be able to continue work, while taking into account several non-exertional limitations. (*Id.*). This assessment by a mental health specialist found none of the marked limitations identified by Dr. Hood. Therefore, the record evidence supports a contrary finding, and the court finds no error in the findings of the ALJ on this issue.[2]

### b. The ALJ Did Not Commit Error by Giving More Weight to the Opinion of Dr. Bentley

Plaintiff further asserts that the ALJ gave improper weight to the opinion of Dr. Bentley. (Pl.'s Mem. 20-22). Plaintiff points to SSR § 404.1513, which lists acceptable sources of evidence to establish an impairment. (Pl.'s Mem. 20). The relevant sources listed include (1) Licensed physicians and (2) Licensed or Certified psychologists. (*Id.*). However, the ALJ specifically confronted this argument during the hearing. (R. 27). As noted by the ALJ, Dr.

---

[2] The court notes that Plaintiff later disavows this argument in his reply. (Pl.'s Rep. 6). Plaintiff provides various explanations for granting Dr. Hood's opinion less weight, noting that Dr. Hood "did not have a specialty in psychological or psychiatry; his opinions were inconsistent with his own treatment notes; Dr. Hood did not refer Plaintiff for mental health care; and the issue of disability is reserved to the Commissioner." (*Id.*). Plaintiff concludes by stating "[c]ontrary to Plaintiff's assertion, these reasons are sufficient under the regulations, and they are supported by substantial evidence." (*Id.*).

11

Bentley was consulted to "assess the severity of [Plaintiff's] severe mental impairments and to offer an opinion regarding the effects of said impairments on [Plaintiff's] ability to function." (*Id.*).

While Plaintiff provides a list of acceptable medical sources (even including podiatrists), the brief inexplicably stops short of that portion of the regulation which provides that "Other Sources" may be consulted to "show the severity of your impairment(s) and how it affects your ability to work."  *See* 20 C.F.R. 404.1513(d).  While Dr. Bentley's testimony was prohibited from being used to establish the existence of an impairment, Dr. Bentley could offer testimony to assist the ALJ in assessing the severity of Plaintiff's impairments.  As the evidence from Dr. Bentley falls within the "Other Sources" category, the court finds no error in giving more weight to Dr. Bentley's opinions.[3]

### 2. The ALJ Did Not Fail to Consider Either All of Plaintiff's Severe Impairments or the Combination of Impairments in Determining Disability

After careful review, the court concludes that the ALJ did not commit error in assessing Plaintiff's impairments, separately and/or in combination.  The court addresses Plaintiff's arguments to the contrary below.

#### a. The ALJ Did Not Commit Error by Failing to Consider All of Plaintiff's Severe Impairments

Plaintiff contends that the ALJ also committed error when she (1) failed to consider Plaintiff's bipolar disorder; (2) failed to follow the slight abnormality standard in finding that Plaintiff's bipolar disorder was non-severe; and (3) violated the mandate of SSR 96-3p by not taking into account the effect of his bipolar disorder. (Pl.'s Mem. 10-11).

---

[3] Again, Plaintiff appears to later disavow his argument that the ALJ gave improper weight to Dr. Bentley in his reply. (Pl.'s Rep. 7). Here, Plaintiff writes "[t]he ALJ also properly considered evidence from Dr. Jack Bentley," and notes that Dr. Bentley "would still qualify as an 'other source.'" (*Id.*). Thus, it would appear there is no dispute over the issue of whether the ALJ gave improper weight to Dr. Bentley's opinion.  *See* Def.'s Mem. at 14.

The record reveals that Plaintiff was hospitalized on July 30, 2008, after a reported suicide attempt, and was discharged from the hospital on August 4, 2008. (R. 25, 355). The discharge diagnoses included polysubstance abuse and depressive disorder. (R. 355). Plaintiff was then evaluated by Dr. Bentley on October 3, 2011, who diagnosed Plaintiff with major depression, polysubstance abuse in remission, and probable borderline intellectual functioning. (R. 25, 411-14). In the hearing before the ALJ, Plaintiff alleged he suffered from both bipolar disorder and schizophrenia, but stated that he was not currently taking medication for his bipolar disorder. (R. 40).

It is important to keep in mind that in the process of applying for Social Security, the claimant bears the burden of establishing the existence of a disability. *See* 20 C.F.R. § 416.912(a). Here, the ALJ found that severe impairments existed, which included: (1) major depressive disorder with anxiety; (2) attention deficit hyperactivity disorder; and (3) borderline intellectual functioning. (R. 21-22). The ALJ also found that these impairments had been determined by medically acceptable evidence. (*Id.*). What is noticeably absent (and this is the basis for Plaintiff's present argument) is the lack of any mention of a diagnosis of bipolar disorder.

Bearing in mind the limited nature of this court's review, the question is whether there is substantial evidence to support the ALJ's finding regarding the existence of Plaintiff's bipolar disorder. It is Plaintiff's burden to prove the existence of such a disability. 20 C.F.R. § 416.912(a). Plaintiff could have attempted to establish the existence of bipolar disorder by consulting with a licensed psychologist. *See* 20 C.F.R. § 404.513(a). Here is the problem: Absent any attempt to provide such evidence, the ALJ was working with only conclusory

allegations of bipolar disorder. (R. 40-41). The court finds that the ALJ did not err by failing to take into account Plaintiff's alleged bipolar disorder.

### b. The ALJ Did Not Err by Failing to Consider Claimant's Combination of Impairments in Determining Disability

Plaintiff alleges that the ALJ failed to consider his combination of impairments. (Pl.'s Mem. 11-13). The ALJ found that Plaintiff had the following impairments: (1) major depressive disorder with anxiety; (2) ADHD; and (3) borderline intellectual functioning, and that these impairments, singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-23). The burden still rests upon Plaintiff at this point to prove his disability. *See* 20 C.F.R. 416.912(a).

In considering whether Plaintiff's mental impairments meet Listings 12.04 and 12.05, the ALJ took into account whether the combined effect of his impairments would satisfy the requirements of those listings. (R. 22). The ALJ identified the requirements to meet those listings, and concluded that Plaintiff had failed to prove that his impairments satisfied those requirements. (*Id.*). Plaintiff was required to prove that his impairments resulted in: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensations, each of extended duration.

The ALJ concluded that Plaintiff had moderate restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, and did not have repeated episodes of extended decompensation. (R. 22). The court finds the ALJ thoroughly considered the evidence in determining whether Plaintiff's combination of impairments met a listing. The ALJ considered both Plaintiff's testimony at the hearing and his prior responses provided as part of a Function Report. (R. 22, 169-76). As the function report

indicates, Plaintiff reported being able to prepare food, assist in household chores, and shop for groceries. (R. 169-72).

The key issue is whether substantial evidence supports the ALJ's conclusions. The record reflects that the ALJ took into account all of Plaintiff's impairments, both singly and in combination, in determining that his impairments did not meet a listing. The ALJ fleshed out the requirements of the various listings in determining whether Plaintiff satisfied their requirements. The court finds that substantial evidence supports the ALJ's ruling. Therefore, the court finds no reversible error.

### 3. The ALJ Did Not Commit Reversible Error by Finding Plaintiff Not Credible, Nor by Drawing Adverse Inferences

After careful review, the court concludes that the ALJ did not commit error when she discredited portions of Plaintiff's testimony and drew adverse inferences against him.

#### a. The ALJ Had Adequate Reasons to Conclude that Plaintiff Was Not Credible

Plaintiff next asks this court to conclude that the ALJ had inadequate reasons to find Plaintiff was not credible. He contends that the ALJ failed to explicitly articulate the reasons for discrediting his pain testimony. (Pl.'s Mem. 13-17). Plaintiff also argues that the fact that he was able to engage in the activities of daily living does not necessarily prove that he would be able to become seek gainful employment, and that the medical evidence, in addition to his testimony, establishes his disability. (R. 14, 17).

The first issue is whether the ALJ explicitly articulated the reasons for discrediting Plaintiff's pain testimony. The ALJ identified the process she followed in evaluating Plaintiff's alleged pain symptoms as involving two steps as follows:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined

> whether there is an underlying medically determinable physical or mental impairment(s)--*i.e.*, an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(R. 24).

The ALJ determined that the first step of the process was met. (R. 26). However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not "entirely credible." (*Id.*). The ALJ went on to provide adequate reasons for discrediting this testimony, such as the fact that neither the alleged diagnosis of schizophrenia was consistently reflected throughout the medical record nor had Plaintiff ever received a diagnosis for his alleged back impairment. (*Id.*). Plaintiff also had inconsistencies between his testimony at the hearing and his statements prior to the hearing, such as whether he experienced difficulty sleeping. (*Id.*).

Given the lack of objective medical evidence for his alleged back impairment and schizophrenia, along with other inconsistencies noted by the ALJ, the court finds that the ALJ had adequate reasons for finding Plaintiff's testimony not entirely credible.

### b.   The ALJ Did Not Commit Error by Drawing Adverse Inferences

Plaintiff's next argument is that the ALJ improperly drew adverse inferences from his failure to seek medical treatment, which he claims was a result of his lack of insurance. (R. 18-20). Plaintiff stated in the hearing that he had not sought treatment for his bipolar disorder because he could not afford a psychiatrist. (R. 40). He also alleged that he had yet to receive a medical diagnosis for his back condition because Dr. Hood was waiting to perform the tests until Plaintiff received a determination of disability. (R. 42).

Plaintiff cites Social Security Ruling 96-7p as one of his arguments for reversing the ALJ's decision. This Ruling states:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

(Pl.'s Mem. 19). This Ruling requires that the ALJ take into account Plaintiff's explanations for his failure to seek out medical treatment. Plaintiff explained that his failure to seek out medical care was a result of his lack of medical insurance. (R. 40). He also asserted that he is only able to see Dr. Hood, his treating physician, because of help from his mother. (R. 42).

The ALJ took this explanation into account in the opinion. (R. 27). As the ALJ notes, Plaintiff is able to afford to smoke a pack of cigarettes every day, and has seen Dr. Hood several times, but has yet to receive a diagnosis for his back impairment. (*Id.*). The ALJ noted that Plaintiff could have sought mental health treatment, but chose to see Dr. Hood instead. (R. 27). Plaintiff bases his claim of disability on mental health issues, but does not appear to have attempted to schedule appointments with mental health specialists.

The court concludes that the ALJ did not commit error by drawing adverse inferences from Plaintiff's lack of medical treatment for his mental health impairments. Plaintiff's lack of credibility, combined with his failure to seek regular mental health treatment, provided a basis for the ALJ's ruling which is based on substantial evidence.

### 4. The ALJ's opinion was based on substantial evidence.

Plaintiff next argues that the ALJ's ruling was not based on substantial evidence. He asserts that the Vocational Expert's testimony was not based on a correct or full statement of his limitations and impairments. (Pl.'s Mem. 17-18). In particular, Plaintiff contends that the Vocational Expert's testimony could not constitute substantial evidence because "the hypothetical question relied upon did not accurately state [his] pain level or his residual functional capacity." (Pl.'s Mem. 17).

In reviewing appeals from the Social Security Administration's rulings, this court must determine whether there is substantial evidence for the ALJ's ruling. If there is, then this court must affirm. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (noting that the Commissioner's factual findings are conclusive when supported by substantial evidence). The burden rests upon Plaintiff to prove that he is disabled. *See Lucas v. Sullivan*, 918 F.2d 1657, 1571 (11th Cir. 1990); 20 C.F.R. § 416.912(a).

Prior to the onset of Plaintiff's alleged disability, he had worked as a packaging machine operator. (R. 47-48). The Vocational Expert testified that a person limited in the same manner as Plaintiff would be able to return to work as a packaging machine operator. Based on this testimony, the ALJ found that Plaintiff would be capable of performing past relevant work as a packaging machine operator. (R. at 27). The Vocational Expert testified that someone limited in the same manner as Plaintiff would also be able to find other areas of employment. (*Id.*). In this

case, the testimony of a vocation expert was not critical to the ALJ's findings because substantial evidence supported those findings even in the absence of such testimony. However, in any event, the ALJ's treatment of the vocational expert's testimony was not error.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this November 17, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE